## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARLEM GLOBETROTTERS INTERNATIONAL, INC., 157 Technology Parkway, Suite 100 Peachtree Corners, GA 30092, <br><br> Plaintiff, <br><br> v. <br><br> U.S. SMALL BUSINESS ADMINISTRATION, 409 3rd Street, SW Washington, DC 20416, <br><br> and <br><br> ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the U.S. Small Business Administration, 409 3rd Street, SW Washington, DC 20416, <br><br> Defendants. | Civil Action No. 1:22-cv-01679 |

### COMPLAINT

Plaintiff, Harlem Globetrotters International, Inc., ("HGI"), by and through counsel, alleges and states as follows:

### INTRODUCTION

1.      This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgement Act, 28 U.S.C. §§ 2201 and 2202, seeking emergency federal financial assistance unlawfully withheld by Defendants Small Business Administration ("SBA") and its Administrator, Isabella Casillas Guzman.

2.      The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, as amended, 15 U.S.C. § 9009a, created the Shuttered Venue Operators Grant ("SVOG") Program to provide emergency financial assistance to eligible live entertainment businesses impacted by

the global COVID-19 pandemic. The SVOG Program is administered by the SBA and Administrator Casillas Guzman.

3.      HGI performs hundreds of live performances each year in venues across the United States and abroad. HGI demonstrated eligibility for a SVOG award in its application to the SBA and appeal to the SBA. The SBA denied both HGI's initial application and subsequent appeal in a conclusory manner, failing to provide a reason for either denial. The SBA provided HGI with a cursory reason for denial only after the final agency decision was rendered.

4.      Compounding the injury, the SBA granted the SVOG application of at least four similarly situated live performing arts organization operators that also deliver immersive experiences to spectators and awarded those businesses SVOG funds. Each similarly situated live performing arts organization operator operates an attraction within or near venues the Harlem Globetrotters also utilize, competing for venue selection and potential customers.

5.      The COVID-19 pandemic has had a devastating impact on HGI, as the HGI was unable to perform due to shuttered venues. In the second and fourth quarters of 2020, HGI experienced a financial loss greater than 95% of its revenue as compared to 2019. In addition, HGI experienced a financial loss greater than 85% of its revenue in the third quarter of 2020 as compared to 2019. HGI should have received a SVOG award for precisely the reason Congress created the SVOG Program: to help eligible live entertainment businesses like HGI overcome economic hardship caused by the COVID-19 pandemic.

6.      SVOG funds are limited, and once the SBA has depleted the appropriated amount through awards, eligible business cannot receive emergency assistance. Therefore, although HGI demonstrated its eligibility as a live performing arts organization operator, it cannot receive

assistance if SVOG funds are depleted before the SBA corrects the erroneous denial of HGI's application.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents federal questions under the APA.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1).

9.      This court has authority to issue declaratory and injunctive relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

10.     Plaintiff HGI owns and operates the Harlem Globetrotters, a live entertainment performance group that performs in over 400 events each year. Founded in 1926, the group has earned its "World-Famous" title by performing for over 100 million fans spread across every U.S. state and over 100 countries worldwide. HGI's Harlem Globetrotters utilize live performers to create an immersive game-like experience, while adhering to a carefully organized script that accommodates guests of all ages. Additionally, the Harlem Globetrotters' performance carries a profound historical impact, particularly surrounding the integration of Black athletes into competitive sports. The team champions the abilities of Black athletes and embodies the rich culture of the Harlem Renaissance by embracing cultural and racial diversity and inclusion domestically and around the globe.

11.     While the Harlem Globetrotters originally operated as a basketball team that performed competitively, the group has adhered to a script throughout its modern performances, making the games not competitive but a performing arts event. The Harlem Globetrotters now employ significant cast members aside from the athletes, who play important roles in facilitating

the immersive experience, including a master of ceremonies. The Harlem Globetrotters do not currently partake in competitive basketball games, evidenced by their perfect record against the Washington Generals (also owned by HGI) since 1971.

12.     Defendant SBA is an independent agency of the federal government. The SBA's mission is to help Americans start, build, and grow businesses.

13.     Defendant Isabella Casillas Guzman is the administrator of the SBA and oversees its operations. Administrator Casillas Guzman is sued in her official capacity.

## BACKGROUND

### A. Shuttered Venue Operators Grant Program

14.     The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the "Act"), signed into law December 27, 2020, included $15 billion for grants to operators of shuttered venues. Pub. L. No. 116-260 § 324. The American Rescue Plan, enacted March 11, 2021, amended the Act by providing an additional $1,249,500,000 for SVOG awards. Pub. L. No. 117-2 §5005(a).

15.     SVOG awards may be used for specified business expenses, including payroll, rent, and utility payments, that are incurred between March 1, 2020 and December 31, 2021. 15 U.S.C. § 9009a(d)(1)(A)(i).

16.     An eligible entity may receive a SVOG award in an amount equal to 45 percent of its gross earned revenue in 2019, up to a maximum award of $10 million. 15 U.S.C. § 9009a(c).

17.     Eligible entities under the Act include live performing arts organization operators. 15 U.S.C. § 9009a(a)(1)(A).

18.     In addition to falling within an eligible business category, to qualify for a SVOG award a business must meet general eligibility criteria including, *inter alia*, that the business was

fully operational on February 29, 2020, suffered at least a 25% reduction of gross earned revenue during at least one quarter of 2020 as compared to 2019, and has reopened or intends to reopen. 15 U.S.C. § 9009a(a)(1)(A). The Act lists several characteristics that would render an entity ineligible, including, *inter alia*, issuance of securities on a national securities exchange, employing more than 500 employees, and presenting live performances of a prurient sexual nature. *Id*. § 9009a(a)(1)(A)(vi), 9009a(a)(1)(B).

19.     The Act defines live performing arts organization operator to include an entity that as a principal business activity organizes, promotes, produces, or hosts "events by performing artists" for which there is a ticketed cover charge, performers are paid a guaranteed amount by contract, and not less than 70 percent of revenue is generated through ticket sales or event beverages, food or merchandise. 15 U.S.C. § 9009a(a)(3)(A)(i).

20.     The Act specifies that for a live performing arts organization operator to be eligible, it must have additional characteristics. It must put on events with defined performance and audience spaces; use mixing equipment, a public address system and a lighting rig; engage one or more individuals to carry out at least two of the following roles—sound engineer, booker, promoter, stage manager, security personnel, or box office manager; sell tickets or impose a cover charge for most performances; pay artists a fair wage; and market its events including through print or electronic publications, websites, mass email, or social media. 15 U.S.C. § 9009a(a)(1)(A)(iii).

B.  **HGI's SVOG Initial Application and the SBA's Denial**

21.     On April 26, 2021, HGI applied for a SVOG award of $10,000,000.

22.     The documents that HGI submitted to the SBA in its initial application included: quarterly profit and loss summaries for 2019 and 2020; box office reports reflecting ticket sales;

contracts with live performing athletes and live performing supporting cast members (Globie the

mascot, a master of ceremonies, and other fictional characters); employee records and contractor

agreements reflecting engagement of a sound engineer, booker and promoter; marketing

materials including links depicting ticket sale durations and various promotions; graphics

demonstrating the venue floor plans, technical rider plans, venue advance checklists, license and

rental agreements, sound mixing equipment, public address system, and lighting rig; full show

scripts; and other documentation.

23.     HGI demonstrated in its initial application that it satisfied the criteria for

eligibility as a live venue operator or promoter. It also submitted certifications of eligibility

required by the SBA's guidance on SVOG applications.

24.     On July 6, 2021, HGI learned from the SBA's portal that its initial application

was denied. The portal's denial notice gave no explanation of the reason the SBA found HGI

ineligible.

25.     On August 13, 2021, HGI submitted an appeal of the denial to the SBA, changing

its designation to "live performing arts organization operator" with instruction from a SBA

informational session. Because the initial denial included no explanation, HGI's appeal

elaborated on why it satisfies all the criteria for eligibility as a live performing arts organization

operator via a justification statement. In addition, HGI resubmitted each of the documents

included in the initial application, along with photos/videos of performances and performer

contracts with the Generals' players. HGI explained in detail how it meets each of the general

eligibility requirements for a SVOG award and each of the specific eligibility requirements for a

live performing arts organization operator.  Essentially HGI treated the appeal as a reapplication.

26.     On November 2, 2021, the SBA notified HGI that its appeal was denied. The

email listed a general list of reasons an appeal could be denied via the SVOG Eligibility Matrix

and stated that HGI's appeal was declined "at least in part" based on reasons 10 and 11. Reason

10 states: "Did not meet the principal business activity standard for the entity type under which

applied." Reason 11 states: "Did not meet one or more of the eligibility criteria specific to the

entity type under which applied." The email then listed a boilerplate statement:

> Please note the list provided in this email may not be a comprehensive list of
> reasons for your decline. To receive additional information as to why your SVOG
> application was declined, please complete this form (direct link:
> https://forms.office.com/g/B7DeKGgF1z). The SBA will aim to provide this more
> specific detail on appeal declines once the SVOG initial application reviews are
> complete.

27.     HGI requested additional information on the denial, and on April 13, 2022, the

SBA provided a response stating that HGI's application was denied due to HGI not operating as

a principal business activity that either (1) sells tickets to live events by performing artists an

average of not less than 60 days before the show date; or (2) creates, produces, performs, and/or

presents live events by performing artists, with not less than 70% of earned revenue coming from

ticket sales/cover charges, sales of merchandise/food/beverage (incl. alcohol), production

fees/reimbursements, and/or nonprofit educational initiatives. 15 U.S.C. § 9009a(a)(3)(A).

28.     However, HGI provided evidence demonstrating that it meets the eligibility

criteria for a principal business activity of live performing arts organization operator listed in 15

U.S.C. § 9009a(a)(3)(A). HGI organizes, promotes, produces, and manages theatrical

productions by performing artists for which a cover charge is applied via ticket sales, and HGI's

performers are paid a fair wage based upon standard contracts.

29.     Further, HGI provided documents demonstrating that it both (1) sells tickets to

live events by performing artists an average of not less than 60 days before the show date; and

(2) creates, produces, performs, and/or presents live events by performing artists, with not less than 70% of earned revenue coming from ticket sales/cover charges, sales of merchandise/food/beverage (including alcohol), production fees/reimbursements, and/or nonprofit educational incentives in compliance with 15 U.S.C. § 9009a(a)(3)(A). First, HGI demonstrated that it releases tickets for purchase before the 60-day threshold of 15 U.S.C. § 9009a(a)(3)(A). Second, HGI demonstrated through financial documentation that over 70% of its show's revenue is generated from ticket sales/cover charges, sales of merchandise/food/beverage (including alcohol), production fees/reimbursements, and/or nonprofit educational incentives. While HGI has demonstrated both requirements under 15 U.S.C. § 9009a(a)(3)(A), the statute merely requires one of the two be met to qualify for a SVOG award.

30.     The SBA granted the SVOG application of at least four similarly situated live performing arts organization operators that each deliver immersive experiences within their respective theatrical capacities: (1) Circus Arts Conservatory, Inc., https://circusarts.org/ (operating a circus) (2) Candlelight Dinner Playhouse, LLC, *see* https://coloradocandlelight.com/ (operating a theater) (3) Black Fedora Comedy Mystery Theatre, LLC, *see* https://www.charlestonmysteries.com/?gclid=EAIaIQobChMI19S29o_s9wIVmIvICh1uMABPE AAYASAAEgIg8vD_BwE (operating comedy murder mystery show) and (4) FELD Entertainment, Inc., *see* https://www.feldentertainment.com/ (operating a variety of shows, including Disney on Ice and Monster Jam). Each of these similarly situated businesses operate in either the same or closely proximate venues as the Harlem Globetrotters, competing for the same venue space and potential consumers. The SBA granted SVOG awards to all four of the similarly situated live performing arts organization operators, each accessible on the SBA's website. *See* awards-as-of-5-23-22.xlsx (live.com).

31.     The SBA's November 2, 2021, denial of HGI's appeal is the agency's final decision.

## CLAIMS FOR RELIEF

32.     The courts recognize a strong presumption favoring judicial review of administrative action.

33.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

34.     The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

35.     The APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A) and (E), respectively.

36.     The SBA is an "agency" whose final actions are reviewable under the APA.

## COUNT I – ARBITRARY AND CAPRICIOUS AGENCY ACTION

37.     HGI repeats and incorporates by reference the allegations contained in the preceding paragraphs.

38.     A basic requirement of administrative law is that an agency provide the reasons for its decision. However, the SBA gave no reason for denying HGI's application and provided only conclusory reasoning that did not explain the agency's reason(s) for denying HGI's appeal. The SBA gave further cursory explanation only after the erroneous final decision had been rendered.

39.     The SBA further erred by treating HGI disparately from at least four similarly situated live performing arts organization operators that were granted SVOG awards.

40.     The SBA's decision on HGI's SVOG application also conflicts with the evidence HGI presented proving its eligibility for a SVOG award as a live performing arts organization operator.

41.     For both these reasons, the SBA's denial of HGI's SVOG award request is arbitrary and capricious.

## COUNT II – AGENCY ACTION CONTRARY TO LAW

42.     HGI repeats and incorporates by reference the allegations contained in the preceding paragraphs.

43.     HGI meets the Act's definition of a live performing arts organization operator and satisfies the Act's SVOG eligibility criteria.

44.     The SBA's denial of HGI's SVOG award request thus violated the Act and is contrary to law.

## COUNT III – AGENCY DECISION UNSUPPORTED BY SUBSTANTIAL EVIDENCE

45.     HGI repeats and incorporates by reference the allegations contained in the preceding paragraphs.

46.     The SBA's denial of HGI's SVOG award request is supported by no evidence in the record, let alone substantial evidence. HGI's application and appeal presented evidence that demonstrates HGI is eligible for a SVOG award.

47.     The SBA's denial of HGI's SVOG award request is thus unsupported by substantial evidence.

## PRAYER FOR RELIEF

For the foregoing reasons, HGI respectfully requests that this Court:

1.      Declare unlawful and set aside Defendants' denial of HGI's SVOG award request.

2.      Preliminarily and permanently order Defendants to consider HGI's application for a SVOG award consistent with applicable law and the evidence before the SBA.

3.      Preliminarily and permanently order Defendants to award HGI $10,000,000 in SVOG funds.

4.      Preliminarily and permanently order Defendants to retain appropriations from the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Pub. L. No. 116-260 § 324) and the American Rescue Plan (Pub. L. No. 117-2 § 5005(b)) in an amount sufficient to fund Plaintiff's SVOG award.

5.      Award Plaintiff its costs and reasonable attorney fees; and

6.      Grant such other and further relief as the Court deems just and proper.


Dated:  June 10, 2022                    Respectfully submitted,


                                        /s/ Gunjan Talati
                                        Gunjan Talati (DC Bar No. 976169)
                                        KILPATRICK TOWNSEND & STOCKTON LLP
                                        607 14th St. NW, Suite 900
                                        Washington, DC 20005
                                        gtalati@kilpatricktownsend.com
                                        Telephone: (202) 481-9941